# IN THE COURT OF APPEALS OF IOWA

No. 24-1414
Filed December 3, 2025

**WILLIAM EDGAR BURTON III,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

William Burton appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

Considered without oral argument by Tabor, C.J., Badding, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

William Burton appeals the district court's denial of his application for postconviction relief (PCR) following his 2019 conviction for second-degree murder. Burton asserts six claims of ineffective assistance of trial counsel. Upon our review, we affirm.

## I. Background Facts and Proceedings

"William Burton shot and killed Cory Channon in Channon's home." *State v. Burton*, No. 19-1754, 2021 WL 2453365, at *1 (Iowa Ct. App. June 16, 2021). The shooting took place after Burton "demanded Channon return a handgun he claimed Channon had stolen from him." *Id*. "Over several hours, the two exchanged text messages that became increasingly profane and threatening." *Id*. Burton and his girlfriend, Crystal Purdy, devised a plan for Purdy to tell Channon she had been kicked out of Burton's home. *Id*. Channon took the bait, and he "invited her to come to his place." *Id*.

Burton—armed with a gun and a neighbor who came along as "muscle in case anything went bad"—followed Purdy into Channon's home shortly after she arrived.[1] *Id*. With his gun "at his side," Burton "demanded Channon return his handgun. As Channon began to stand up [from the couch], Burton raised his handgun and with its laser sight activated shot Channon. Channon fell back onto the couch. Burton, Purdy, and [the neighbor] then drove away." *Id*.

---

[1] On the drive to Channon's home, Burton told Purdy "[s]omeone is going to die tonight." *Burton*, 2021 WL 2453365, at *1.

The State charged Burton with first-degree murder.[2]  Burton pled not guilty and raised a justification defense, claiming "he had a permit to carry a concealed weapon and, when Channon 'charged' at him, he reasonably feared for his life and shot Channon in self-defense."  *See id.* at *2.  The case proceeded to trial, and the jury found Burton guilty of the lesser-included offense of murder in the second degree.  *Id*. at *6.  Burton appealed, claiming:

> (1) the court erred in denying his motion for mistrial based on juror misconduct, (2) the court abused its discretion in admitting three irrelevant and unduly prejudicial photos of Burton's home, (3) the court abused its discretion in allowing Croy to testify,[3] (4) by limiting Burton's testimony about Channon's violent prior acts, the court denied him the right to adequately present his defense, (5) there is insufficient evidence to support the verdict, and (6) the court erred in instructing the jury it could infer malice aforethought from use of a dangerous weapon.

*Id.*  The court rejected Burton's claims and affirmed his conviction.

Burton filed a PCR application, raising various claims of ineffective assistance of counsel.  Following the PCR trial, at which Burton and others testified, the district court denied the application.  Burton appeals.

## II.     Standard of Review

"We ordinarily review PCR rulings for correction of errors at law."  *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022).  "However, when the applicant asserts claims of a constitutional nature, our review is de novo."  *Ledezma v. State*,

---

[2] The State also charged Purdy with murder.  She "entered into a plea agreement and testified at Burton's trial."  *Burton*, 2021 WL 2453365, at *2.

[3] Mikayla Croy testified she stayed at Burton's "trap house" for several weeks before Channon's death because she was homeless.  *Burton*, 2021 WL 2453365, at *4.  Croy testified they "all used [methamphetamine] together" and Burton became "very aggressive" when he used.  *See id.*

626 N.W.2d 134, 141 (Iowa 2011). Accordingly, "we review claims of ineffective assistance of counsel de novo." *Id.*

To establish ineffective assistance of counsel, Burton must show "(1) counsel failed to perform an essential duty and (2) prejudice resulted." *State v. Keller*, 760 N.W.2d 451, 452 (Iowa 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). However, "[i]f the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142.

## III. Discussion

Burton raises six ineffective-assistance-of-counsel claims on appeal. We address his claims in turn.

First, he argues his trial counsel "was ineffective for failing to preserve error and object to a mistrial based [solely] on the district court's ex parte communications with the jury foreperson." Here, Burton maintains "[t]rial counsel's failure to include the ex parte communication in Burton's request for a mistrial was a breach of an essential duty" requiring reversal. According to Burton, "[p]rejudice is presumed." However, because this claim is in a PCR proceeding, Burton is required to show prejudice. *Smith v. State*, 7 N.W.3d 723, 730 (Iowa 2024) ("[A] showing of constitutional prejudice is required even where prejudice would have been presumed if error had been preserved. This is due to the fundamental distinction between claims involving preserved error and unpreserved error." (internal citation omitted)). Because Burton does not otherwise allege prejudice, we decline to consider this claim.

Second, Burton claims trial counsel failed to adequately object to Croy's testimony. Burton argues Croy's testimony "was not relevant, prejudicial, and full of prior bad acts." Much of Croy's testimony Burton argues was prejudicial concerned Burton's use of methamphetamine. Because of this, Burton asserts, "[a]ll of these accusations paint[ed him] as a bad, scary person, prompting the jury to decide the case on an improper basis." Despite Burton's argument, the jury was made aware Burton used methamphetamine through other evidence which was not challenged at trial. *Burton*, 2021 WL 2453365, at *12. And as this court held on direct appeal, the evidence was not unfairly prejudicial to Burton. *Id*. ("We agree the State presented sufficient evidence Burton's aggressiveness under the influence was admissible for the purpose of intent, motive, absence of mistake, or lack of accident."). We concur. Burton's claim is unpersuasive.

Third, Burton argues trial counsel failed to object to the admissibility of evidence regarding his drug use. Here, Burton asserts, "[t]he jury was likely to punish [him] for being an intravenous meth user who ran a trap house—none of which had any relevance to whether the shooting was in self-defense." Because Burton claimed self-defense at trial, he would have had no duty to retreat if he was not engaged in an illegal activity. *See* Iowa Code § 704.1(3) (2018). On this issue, the court held on direct appeal:

> We agree the State presented sufficient evidence Burton's aggressiveness under the influence was admissible for the purpose of intent, motive, absence of mistake, or lack of accident. The trial court . . . carefully considered Burton's reliance on his claim he was "[a] person who [was] not engaged in illegal activity" with no duty to retreat, as well as the State's burden in showing Burton was not justified in shooting Channon.

*Burton*, 2021 WL 2453365, at *12 (all but first alteration in original). The court found such evidence was properly admitted, and we concur. Burton's claim must fail.

Fourth, Burton asserts trial counsel failed to preserve error on the violation of his constitutional right to present a defense. Specifically, Burton claims he "had knowledge of specific instances of Channon's aggressive and violent character but was prevented from testifying to most of it." We determine Burton was able to testify to some issues of Channon's aggressive nature, but the court properly limited his testimony. Much of testimony he wished to give was based on speculation and rumor. On direct appeal, the court held Burton's right to present his defense was not violated, finding Burton "has no actual knowledge of this purported conduct: he only states Channon told him." *Id.* at *13. As the court determined, "None of the proposed testimony falls within allowable evidence under Iowa Rule of Evidence 5.405. The trial court properly analyzed the proposed testimony under the [holding in *State v. Williams*, 929 N.W.2d 621 (Iowa 2019)], and we find no error." *Id.* at *13; *see Williams*, 929 N.W.2d at 636 (holding "a defendant asserting self-defense or justification may not prove the victim's aggressive or violent character by specific conduct of the victim *unless* the conduct was previously known to the defendant"). As this underlying claim was already rejected on direct appeal, Burton's claim fails.

Fifth, Burton argues trial counsel failed to properly object to Crystal Purdy's testimony. Burton first argues, "Purdy should have been cross-examined in her reasonable fear that Channon was going to harm Burton or herself. If she denied it, she should have been impeached[.]" Burton further argues trial counsel "failed

to question Purdy about her motives for changing her story and testifying against Burton once she knew he was not the father of her child[.]" On this issue, the PCR court found: "It has not been demonstrated there was any deficiency in [trial counsel's] cross-examination of Purdy and, if so, how it was prejudicial to Burton." We concur. We affirm the court's denial of this claim.

Lastly, Burton claims trial counsel failed to present evidence regarding his habit of carrying a gun. While Burton himself testified about his gun ownership, he argues "it was important for the jury to hear about [his] habit of carrying a gun from someone other than [himself]." Burton wanted his mother Sharon Burton to testify about his long-term use of guns for hunting and target practice. She was not called. It appears from a subsequent deposition of Ms. Burton her testimony would have been duplicative. Thus, Burton concludes, "when considering the sheer volume of prejudicial and improper evidence the jury was exposed to, [he] did not receive his constitutional right to a free trial."

Under these facts and circumstances, we believe either the merits of Burton's underlying claims have already been rejected or any alleged deficiency by counsel did not affect the outcome of Burton's trial. As this court noted on direct appeal, there was "overwhelming evidence of Burton's guilt." *Burton*, 2021 WL 2453365, at *11. Burton has not shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland*, 466 U.S. at 694). Accordingly, Burton's claims of ineffective assistance of counsel fail. We affirm the court's denial of his PCR application.

**AFFIRMED.**